IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY CORPORAL,

    Plaintiff,

    v.

WARDEN WEBER,
ASSISTANT WARDEN BUTLER,
SECURITY CHIEF ARNOLD,
F. TAYLOR,
COMMISSIONER HILL,
SECRETARY GREEN,

    Defendants.

Civil Action No.: DKC-20-2681

## MEMORANDUM OPINION

Pending in this civil rights case are motions filed by Plaintiff Jeffrey Corporal for default judgment (ECF Nos. 15 and 21) and to dismiss Defendants' motion for summary judgment (ECF No. 23); and a motion filed by Defendants to dismiss or for summary judgment (ECF No. 16). Plaintiff has also filed responses in opposition to Defendants' motion (ECF Nos. 18, 19, and 22), an amended complaint (ECF No. 20), and motions for partial summary judgment (ECF No. 24) and for production of documents (ECF No. 25). No hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Plaintiff's motions will be denied and the complaint and amended complaint shall be dismissed.

## BACKGROUND

A.    Complaint Allegations

In his initial complaint, Plaintiff alleged that he was denied meaningful access to the courts when receipt of a decision by the Inmate Grievance Office ("IGO") dismissing his grievance was delayed because it was delivered by the prison's private mail delivery service. ECF No. 1 at 3-4. Plaintiff explains that he had 30 days to appeal the IGO's dismissal of his claim to the Circuit

Court for Alleghany County, but a 20-day delay in receiving the decision prohibited him from meeting that deadline. *Id*. at 3, 4. Plaintiff faults the delay on the use of the private mail delivery service in lieu of the U.S. Postal Service for delivery of IGO decisions. *Id*. at 3-4. He states that the IGO decision dismissing his grievance as meritless was dated June 19, 2020, and was delivered on July 8, 2020. *Id*. at 3. To compound the problem, Plaintiff states that he did not know the address of the Circuit Court and wrote to the prison law library to ask for the address and "for the Maryland rule book governing judicial review procedures in Maryland court," but he never received a response "pursuant to the COVID-19 pandemic policy of Defendant Security Chief Arnold, Security Chief at WCI; Assistant Warden Butler, Assistant Warden of WCI; Warden Weber, Warden of WCI; and Commissioner Hill and Secretary Green." *Id*. at 5.

Plaintiff adds that "WCI's law library, its librarian and clerks have been prohibited since April 2020 from distributing law materials to housing unit 4, and take weeks, sometimes months, to respond to prisoners' letters requesting [ ] law information, whereas the pre-covid-19 pandemic law library policy permitted the [librarian] and its clerks to provide legal materials to housing unit 4 prisoners monthly, and to respond within a few days to prisoners' letters asking for legal information." ECF No. 1 at 5. Plaintiff states that he was prevented from meeting the July 17, 2020, deadline for appealing the dismissal of his grievance and adds that "5-days was inadequate for him to meet the deadline" because there was not enough time for him to buy supplies at the commissary, conduct legal research, and draft his appeal. *Id*. at 6. Plaintiff surmises that he would have needed "at least 19-days to meet the filing deadline" but adds that even if he had that much time, he would not have been able to meet the deadline because the librarian was prohibited from delivering the law book he requested and the librarian never responded to his letter requesting the State court's address. *Id*.

The legal claims Plaintiff asserts are that he was prohibited from raising in a petition for judicial review to the State court violations of his First Amendment right of access to the courts, his Eighth Amendment right to be free from cruel and unusual punishment, and his rights under "Maryland prison policies, WCI ID 110-41 and DCD 110-4." ECF No. 1 at 6. He explains that IGO case no. 201-017-78 concerned his claims against Lt. Smith (housing unit 4 manager), Warden Weber, Commissioner Hill, and Secretary Green's policy for operating temporary isolation cells where Plaintiff was improperly confined from December 5 to 11, 2019. *Id.* at 7. He adds that his conditions of confinement claim, as stated in IGO case No. 201-914-00 was dismissed in a decision dated November 7, 2019; and he did not receive the decision until November 27, 2019. *Id.* at 8. The underlying complaint concerned his confinement to the temporary isolation cell from July 26, 2019 to August 5, 2019. *Id.* Plaintiff claims that because he could not appeal the IGO's dismissal of his grievances, he lost the opportunity to seek damages for violation of his rights under State law and prison policies; enforcement of the prison policies; and to seek suspension without pay for the prison officials who violated the policies. *Id.* at 9.

Plaintiff adds that he received two additional IGO decisions on July 8, 2020. The two decisions were IGO case number 202-005-97, which was dated June 25, 2020 and IGO case number 202-006-13, which was dated June 22, 2020. ECF No. 1 at 9-10. He deduces from the receipt of three IGO decisions on one day that the Division of Correction's mail policy for delivering IGO decisions to prisoners is to only deliver them "a few times monthly." *Id.* at 10.

In this action, Plaintiff's claims are that: (1) the "inadequate mail service or policy" of Secretary Green, Commissioner Hill, and Executive Director Taylor that results in a 20 day delivery time of his legal mail from the IGO violated his First Amendment right of access to the courts; and (2) the "inadequate library policy for WCI" of Chief Arnold, Assistant Warden Butler,

and Warden Weber, along with the mail service policy, also violated his First Amendment right of access to the courts.[1] *Id.* at 10.

As relief, Plaintiff seeks twenty-thousand dollars in punitive damages, eight-hundred thousand in compensatory damages, and a permanent injunction compelling the Division of Correction and the IGO to use the U.S. Postal Service to deliver legal mail to prisoners in the State of Maryland. ECF No. 1-1.

B.    Plaintiff's Pending Motions

1.    Default Judgment

On February 9, 2021 and March 9, 2021, the court received Plaintiff's motions seeking either default judgment or contempt of court against Defendants. ECF Nos. 15 and 21. Plaintiff asserts in his first motion that Defendants were granted a thirty-day extension of time to and including January 19, 2021, to respond to his complaint by order dated December 18, 2020. ECF No. 15 at 1, *see also* ECF Nos. 11 and 12. Plaintiff states that Defendants did not file a response by the deadline and seeks "a total of $6 million" in damages as well as the injunctive relief sought in his complaint. ECF No. 15 at 2.

In his second motion seeking default judgment, Plaintiff takes issue with this court's Order of February 3, 2021, granting Defendants to and including February 23, 2021 to respond to the complaint. ECF No. 21 at 1. Plaintiff asserts that Defendants failed to respond to the complaint in a timely manner, entitling him to default judgment. Plaintiff expands further on his assertions in the context of his motion to dismiss Defendants' motion for summary judgment where he argues that counsel's reliance on "inadvertent error" for missing the deadline to respond to the complaint on or before January 19, 2021, is insufficient to establish "excusable neglect" pursuant to Fed. R.

---

[1]    Plaintiff lists four claims; however, the third and fourth claims appear to repeat the first two claims. ECF No. 1 at 11.

Civ. Proc. 6(b)(1)(B). ECF No. 23 at 2. Plaintiff additionally notes that this court's order granting Defendants a second extension of time in which to respond to the complaint indicates that the second motion for extension of time was the second time counsel requested additional time to respond after the due date. *Id.*, *see also* ECF No. 14 at 1.

Under Fed. R. Civ. P. 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).

Since the onset of the worldwide COVID-19 pandemic the ordinary course of business in every arena has been interrupted or delayed. While this court is mindful of the difficulties faced by counsel, compliance with deadlines set by this court have not been suspended and counsel for Defendants in this case was reminded of that fact and forewarned that no further extension would be permitted absent good cause. Defendants then complied with the new deadline and the litigation of this matter was not unduly delayed. Plaintiff's motions for default judgment shall be denied.

2. Motion to Produce Documents

In this motion, Plaintiff simply demands to be given a copy of the IGO decision in IGO Case No. 20101778 and states that the document will establish he is entitled to partial summary judgment. ECF No. 25. Discovery has not commenced in this case. *See* Local Rule 104.4 (D.

Md. 2018).[2]  To the extent that this motion is intended to invoke Fed. R. Civ. P. 56(d), it is insufficient to establish Plaintiff's entitlement to discovery.

Federal Rule of Civil Procedure 56(d) provides that:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:

(1) Defer considering the motion or deny it;
(2) Allow time to obtain affidavits or declarations or to take discovery; or
(3) Issue any other appropriate order.

A "party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd*

---

[2]  "[D]iscovery shall not commence and disclosures need not be made until a scheduling order is entered."

*on other grounds*, (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008).

Because Plaintiff has not explained why he is entitled to engage in discovery for purposes of opposing Defendants' motion, the pending motion for production of documents is denied to the extent it invokes Fed. R. Civ. P. 56(d).  Further, as set-forth below, the subject matter of the IGO decision Plaintiff seeks by this motion is already a part of this record.  *See* ECF No. 1 at 6-7.

C.     Amended Complaint

Plaintiff's amended complaint was received by the court on March 9, 2021, fourteen days after Defendants filed their motion to dismiss or for summary judgment and on the same date his response in opposition (ECF No. 18) was received.  ECF No. 20.  Pursuant to Fed. R. Civ. P. 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Plaintiff's amended complaint changes his requested relief to one-million dollars in compensatory damages and ten-thousand dollars in punitive damages and "adds facts supporting his claim." ECF No. 20 at 1.  He states that he filed an administrative remedy procedure complaint ("ARP") complaining that prison staff had illegally censored his books and "ultimately appealed" the matter to the IGO.  *Id.* at 2.  He states that he received a letter dated December 14, 2020,

instructing him to provide the IGO with documentation within 30 days but was unable to comply because he did not receive the letter until January 19, 2021, five days beyond the IGO deadline. *Id*. at 2-3. He cites this as an additional example of how the private mail delivery service utilized by the DOC prevented him from pursuing his administrative remedies. *Id*.

To the extent that Plaintiff is adding facts that are supportive of his original claim, the amended complaint is construed as a supplemental pleading pursuant to Rule 15(d).[3] The additional facts asserted shall be considered in the context of Defendants' dispositive motion.

D. Defendants' Response

Defendants assert that the complaint fails to state a claim upon which relief should be granted because the allegations are vague, Defendants are entitled to qualified and absolute immunity,[4] and Plaintiff has failed to exhaust administrative remedies. ECF No. 16. In support of their motion, Defendants provide the declaration of Liam Kennedy, the librarian at WCI. ECF No. 16-3.

Mr. Kennedy explains that the library at WCI is not "a true law library" because it does not contain a complete set of law reporters and other legal treatises. ECF No. 16-3 at 1, ¶ 2. Rather, the library "provides access to legal information, including case law." *Id*. In March 2020, access to the library was restricted due to the COVID-19 pandemic. *Id*. at ¶ 3. The restriction was communicated to the inmate population. *Id*.

---

[3] Rule 15(d) provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time."

[4] Because this court concludes that the complaint fails to state a claim upon which relief may be granted, Defendants' immunity claims will not be addressed.

Mr. Kennedy was working remotely in March of 2020 and continued to do so until late August of 2020 when he was directed to return to the WCI library full time. ECF No. 16-3 at ¶¶ 4-5. He was again directed to begin teleworking in October 2020 and, at that time, access to the library was again restricted. *Id*. at ¶ 5. He states this restriction was again communicated to all inmates. *Id*. In February 2021, Mr. Kennedy began working on-site at the library two days per week; a schedule he maintained at the time his declaration was written. *Id*. at ¶ 6. He concludes that the restricted access to the library was done for the safety of the inmate population and not for the purpose of harming any inmate. *Id*. at 2, ¶ 7.

## STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants assert that the complaint fails to state a claim upon which relief may be granted because the complaint does not satisfy the basic pleading requirements set forth in Rule 8 as he makes no specific allegations against the named Defendants. ECF No. 16-1 at 2. The complaint states that Defendants Taylor, Hill, and Green have instituted a prison policy to utilize a private mail delivery service for delivery of "legal mail" pertaining to IGO complaints and appeals of ARPs to the Commissioner of Correction. ECF No. 1 at 3. Plaintiff further alleges that Defendants Arnold, Butler, Weber, Hill and Green instituted a COVID-19 pandemic policy prohibiting the delivery of legal materials to housing unit 4 at WCI and that when requests are answered there is an inordinate delay, preventing Plaintiff from litigating his claims. *Id.* at 5. While the complaint does raise allegations against the Defendants named, it is nevertheless subject to dismissal on the merits of the claims asserted.

A.  Exhaustion of Administrative Remedies

Defendants assert that they are entitled to dismissal of the complaint because Plaintiff filed the instant lawsuit before enough time passed for the administrative remedy process to be exhausted.  ECF No. 16 at 12.  They note that Plaintiff submitted an ARP on July 18, 2020 regarding the delay in receiving his IGO decision but filed this complaint on September 7, 2020. *Id*.  They state that given the time frames established in Md. Code Ann., Corr. Servs. §§ 10-206, 10-210 as well as COMAR 12.02.28.18, it takes "at least a total of 60 days" to exhaust administrative remedies and Plaintiff filed his complaint 51 days after filing his initial ARP.  *Id*.

Failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).  A claim that has not been exhausted may not be considered by this court.  *See Bock*, 549 U.S. at 220.  In other words, exhaustion is mandatory.  *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust.  *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d 717, 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S.

81, 88, 93 (2006).[5]  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S.Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit.  *See Chase*, 286 F. Supp. 2d at 529-30.  As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions.  *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to the exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure.  *See Booth*, 532 U.S. at 741.

The *Ross* court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play."  136 S. Ct. at 1859.

---

[5] "In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ('ARP') process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ('IGO'). *See* Md. Code Ann., Corr. Serv. §§ 10–206, 10–210 and Code of Maryland Regulations ('COMAR'), Title 12 § 07.01.05; *see also* Division of Corrections Directive ('DCD') 185–002, § VI.N I." *Minton v. Childers*, 113 F. Supp. 3d 796, 801 (D. Md. 2015).

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Defendants' supposition that "there is no credible way that Plaintiff exhausted his administrative remedies in the 51 days from when he filed his ARP to when he prematurely filed the instant matter" provides no refutation of the gravamen of Plaintiff's complaint which is that his efforts to exhaust administrative remedies are thwarted by failures to process his claims properly and to deliver notices and decisions from the IGO in a timely manner. Plaintiff asserts that his ARP was dismissed pending resubmission, but he was never provided with notice of that decision and was unable to resubmit the ARP in accordance with that directive. ECF No. 22 at 2. The entirety of Plaintiff's claim is that his efforts to access a resolution to his complaints through the administrative remedy process has been thwarted by Defendants, therefore the non-exhaustion defense is inapplicable under the circumstances of this case. Defendants have failed properly to support this affirmative defense.

B.     Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the

> inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). Mr. Corporal complains about the delay in receiving decisions of the Inmate Grievance Office which adversely affected his ability to appeal those decisions to state court. As will be discussed, his allegations do not state a viable claim under 42 U.S.C. § 1983 both because he has not articulated a legitimate claim that was lost due to the delay, and more broadly because appeal of IGO decisions to state court is not part of the administrative exhaustion process that a prisoner must complete preliminary to bringing a claim under the PLRA and because any impairment of the ability to bring state law claims in state court, not directed at a prisoner's sentence or conditions of confinement on constitutional grounds, is not within the protection articulated in *Bounds*.

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the court characterized access-to-the courts claims as being in one of two categories. *Id.* at 413-14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present

time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a Plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. at 1208. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming that he was denied access to the courts must ultimately prove that he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 416 (footnote omitted). "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id*. at 415.

Defendants do not address the sufficiency of the claims underlying Plaintiff's access to courts claim. Rather, they limit their response to the operation of the WCI library and the necessity to change the normal operations of the library during the pandemic. *See* ECF No. 16-2. Further, they do not explain how IGO decisions are delivered to WCI inmates but simply ask this court to take judicial notice of the fact that mail sent through the United States Postal Service has been

delayed across the entire country. There is nothing in Defendants' motion denying the use of a private delivery service or denying Plaintiff's claim that documents related to appeals of ARPs to the Commissioner or to the IGO are delivered only twice per month. This court will assume Plaintiff's allegations in this regard are true and analyzes his access to courts claim below.

1.    IGO No. 201-017-78

Plaintiff asserts that this IGO complaint concerned his claim that Lt. Smith, the manager for housing unit 4 at WCI, improperly confined him to an isolation cell for six days (December 5 through 11, 2019). ECF No. 1 at 6-7. He states that his Eighth Amendment rights were violated during his stay in the isolation cell because the bright light inside the cell stayed on continuously and could not be turned off. *Id*. at 7. He further claims that he was denied access to any of his property and was provided only a pair of socks, a jumpsuit, and boxer shorts to wear. *Id*. He states that he was also denied a blanket as well as health and hygiene products, legal documents, the ability to send and receive mail, and out-of-cell activity including a shower. *Id*. As a result, Plaintiff suffered stress and anxiety, sore feet, knees and ankles, headaches, sleep deprivation, itchy skin from not taking a shower, and a sore throat due to the cold temperatures. *Id*. at 8. He does not make a connection between his ability to litigate this claim and the failure to deliver legal mail to him in a timely manner. It therefore does not state a claim and must be dismissed.

2.    IGO No. 201-914-00

This complaint concerned Plaintiff's confinement to the same temporary isolation cell from July 26, 2019 to August 5, 2019. ECF No. 1 at 8. His claim in this complaint mirrors the claim he raised in IGO No. 201-017-78, but here he asserts that he was denied the opportunity to appeal the IGO's dismissal of his complaint to the State circuit court because the IGO decision dated November 7, 2019 was delivered to him on November 27, 2019. *Id.* As a result, he claims that he was prevented from seeking damages for violation of his rights under Maryland State law, damages

for violations of applicable prison policies, enforcement of his rights under State law and applicable prison policies; and removal or suspension of the State employees who violated prison regulations. *Id.* at 9. Because he lost the right to appeal the dismissal of his IGO complaint, Plaintiff asserts he was limited to seeking "only damages" as to this claim.

Plaintiff filed a complaint in this court concerning the allegation that he was improperly confined to an isolation cell from July 26, 2019 to August 5, 2019. *See Corporal v. Security Chief Butler*, Civ. Action No. DKC-19-3490 (D. Md. 2020).[6] This court granted summary judgment in favor of Defendants in a Memorandum Opinion dated December 7, 2020. *Id.* at ECF Nos. 26 & 27. The complaint was not dismissed for failure to exhaust administrative remedies; rather the undisputed facts on the record of that case did not support a finding that Plaintiff's Eighth Amendment rights were violated. *Id.* ECF No. 26 at 12. Additionally, this court found that Plaintiff failed to allege adequately that he was denied the opportunity to litigate an ongoing, nonfrivolous, and arguable claim by virtue of the fact that he was denied access to his mail for ten days. *Id.* at 14-15. Plaintiff's access to the courts claim was therefore dismissed as conclusory. *Id.* at 15.

With regard to Plaintiff's exhaustion of administrative remedies in that case, Defendants provided verified records demonstrating that Plaintiff filed an ARP on August 5, 2019, concerning his allegation that he was placed in a temporary isolation cell without the Warden's approval for ten days. *Id.* at ECF No. 19-16, p. 8. His allegations included claims that the assignment violated applicable prison regulations and that the conditions under which he was confined violated the

---

[6] The court may properly take judicial notice of its own records and other matters of public record when considering a motion to dismiss. Reference to such matters does not convert the motion to one for summary judgment. *Burley v. Baltimore Police Department,* 422 F.Supp.3d 986, 1011-12 (D.Md. 2019).

Eighth Amendment.  *Id*. at 8-9.  The ARP was investigated, and Assistant Warden Butler provided the following response on August 28, 2019:

> Your request for administrative remedy is dismissed.  You were on staff alert status from 7/26/19 through 8/5/19.  During this time you were continuously asked to comply with a new housing assignment which you refused.  You received basic clothing and food needs while housed in this cell.  Staff did not receive any complaints of medical or psychological issues.  At no time was staff unprofessional or act outside the scope of their authority.  No further actions will be taken in the matter.

*Id*. at 2.  On August 29, 2019, Plaintiff appealed the Warden's response to the Commissioner of Correction.  *Id*. at 11.  In a response dated September 16, 2019, Plaintiff's appeal was dismissed by the Commissioner.  *Id*. at 13.  Plaintiff filed an appeal to the IGO which was received in that office on October 8, 2019.  *Id*. ECF No. 19-17 at 3.  Plaintiff contacted the IGO by letter dated November 7, 2019, inquiring about the status of his appeal.  *Id*. at 2.  In response, Deputy Director of the IGO, Robin Woolford, sent Plaintiff a letter stating that his appeal was being dismissed after a preliminary review of his complaint.  *Id*. at 3.  Plaintiff's complaint filed with this court was dated November 30, 2019.  *Id*. at ECF No. 1.  Review of the docket in that case, and others filed by Plaintiff near that time, establishes that he was able to file appropriate motions, oppose Defendants' dispositive motion, filed a motion to alter or amend, and, after the latter was denied, appealed the decision to the Fourth Circuit Court of Appeals where it remains pending.[7]  *See Corporal v. Security Chief Butler*, No. 20-7894 (4th Cir. 2020).

Plaintiff's asserted loss of other remedies that he may have been able to pursue in the context of an appeal of a summary dismissal by an administrative agency is tenuous at best, given the evidence produced by Defendants in Civil Action No. DKC-19-3490.  That evidence supported Defendants' allegations that:

---

[7]  Review of the Fourth Circuit docket establishes that Plaintiff has complied with all requirements to pursue his appeal.

On July 26, 2019, Mr. Corporal received an infraction for violating Rules 316 (disobeying an order) and 402 (being in an unauthorized location) in connection with his refusal to accept a new cell assignment. ECF No. 19-5 at 1 (Notice of Inmate Rule Violation). The infraction notice was written by Sgt. J. Bennett who was assigned to Housing Unit 4 (HU 4) as the Officer in Charge ("OIC"). *Id.* Sgt. Bennett wrote in the infraction that when Mr. Corporal was told to pack all of his belongings because he was being moved to HU 5, Mr. Corporal stated that he was refusing to move. *Id.* After warning Mr. Corporal that his refusal would result in an infraction and giving Mr. Corporal a direct order to pack his belongings, Sgt. Bennett removed Mr. Corporal from his cell and escorted him to cell 4A-25A. Mr. Corporal refused to move into that cell. *Id.* Sgt. Bennett then escorted Mr. Corporal to cell 4B-2 "for monitoring of behavior and compliance with staff." *Id.* Mr. Corporal refused to move to another cell because he did not want to be housed with another inmate. ECF No. 19-7 at 2.

On July 29, 2019, Mr. Corporal was assessed by Karen Brown, RN, for "seg placement suicide risk." ECF No. 19-14 at 2-3. Ms. Brown noted that Mr. Corporal had refused to be assessed and refused to sign a Release of Responsibility ("ROR") form. *Id.* at 3. She educated Mr. Corporal on weekly mental health rounds in the segregation unit, as well as other matters such as how to access mental health by sick call slip and suicide prevention. *Id.*

On July 31, 2019, Lt. J. Smith who was the Special Confinement Unit Manager, sent a notice to the Chief of Security indicating that he had attempted to remove Mr. Corporal from "Staff Alert Status" but Mr. Corporal was "still non-compliant with accepting a housing assignment with anybody." ECF No. 19-7 at 1. Lt. Smith noted that Mr. Corporal had refused a shower and "a vitals check" and that he redesignated Mr. Corporal to "Staff Alert" until he complied with staff to accept housing. *Id.* Chief of Security Lt. Butler approved the assignment to Staff Alert. *Id.*

The Staff Alert designation is "a temporary designation to alert staff of inmates who pose a substantial threat to the security and order of the institution, or who threaten harm to staff or other inmates and are in need of special handling practices." ECF No. 19-8 at 1-2 (Directive No. WCI.110.0006.1.04.B(2)). Once an inmate is placed on Staff Alert, if an officer "believes the inmate's behavior during the past 24-hour period justifies it, the Officer may recommend, in writing to the Supervisor at any time, that the inmate's Staff/Behavioral Alert Designation be evaluated for removal or for the inmate to remain on staff alert." *Id.* at 7. Inmates placed on Staff Alert are to "remain on Staff/Behavioral Alert Designation only for the amount of time necessary to modify their behavior." *Id.* There are specific requirements for receiving showers, recreation time, and possessing property.

Showers are provided in accordance with HU 4 policy. ECF No. 19-8 at 9. Additionally, inmates are escorted to the shower in restraints and must be re-cuffed in front of their bodies during the shower. *Id.* After the shower is

completed, the inmate is provided with the jumpsuit worn during the escort to the shower and, after he puts on the jumpsuit, he is restrained behind his back once again. *Id*.

Recreation is provided when the inmate's behavior warrants it. ECF No. 19-8 at 9. Staff Alert inmates are escorted to the "recreation cage" in full restraints and must remain restrained during recreation. *Id*. The inmate's handcuffs may be moved to the front for recreation, but the leg irons must remain in place. *Id*.

When an inmate is assigned to Staff Alert, all of his property is removed, inventoried, and stored in the HU 4 Property Room. ECF No. 19-8 at 9. Property is then given back to the inmate "according to the inmate's behavior." *Id*. Hygiene items are "provided as needed" and the inmate "will be placed in a jumpsuit and issued a mattress, unless those items are deemed to be a threat to the security of the inmate's housing area." *Id*.

Mr. Corporal's Staff Alert status was reviewed every day from July 27 through August 5, 2019. ECF No. 19-9. Each day until August 5th, it was noted that Mr. Corporal continued to refuse to share a cell with anyone. *Id*. at 2-10. On August 5, 2019, it was recommended that Mr. Corporal be removed from Staff Alert Status because he was then compliant with accepting a housing assignment. ECF No. 19-9 at 1. This is also the date of Mr. Corporal's adjustment hearing for his July 27, 2019 infraction. Mr. Corporal refused to attend the adjustment hearing and instead entered a guilty plea to the charges. ECF No. 19-5 at 4, 7-8. As a penalty, Mr. Corporal was given 15 days of segregation. *Id*. He was then escorted to an assigned cell in segregation with his allowable property. ECF No. 19-9 at 1.

Civil Action No. DKC-19-3490, ECF No. 26 at 3-5. His loss of the opportunity to allege unnamed violations of State law and/or prison regulations in connection with this case does not state a First Amendment claim and must be dismissed.

       3.      IGO Case Nos. 202-005-97 and 202-006-13

Although Plaintiff asserts that the IGO decisions in these cases were received by him on the same date, proving, in his view, that delivery of legal mail to WCI only occurs "a few times monthly", he does not state what these complaints concerned. ECF No. 1 at 10. To the extent that this claim concerns the generalized claim that use of a private mail delivery service has an adverse impact on Plaintiff's ability to litigate his administrative agency appeals, the claim fails.

4.      Use of Private Delivery Services

Plaintiff claims that Defendants' use of a private delivery service to deliver legal mail from the IGO to prisoners violates his First Amendment right of access to courts.  As stated by Defendants, delays in mail delivery by the United States Postal Service are well established.  *See e.g.*, https://www.nytimes.com/2021/03/21/us/politics/postal-service-mail-delivery.html (delivery times falling short of postal service standards); https://www.washingtonpost.com/business/2021/02/26/usps-delays-bills-medications/ (delays in deliveries of paychecks and bills resulting in additional fees to consumers); https://baltimore.cbslocal.com/2021/01/13/usps-delays-create-problems-for-residents-paying-bills-through-mail-receiving-packages/ (USPS delays) (last visited April 5, 2021).  The use of a private delivery service cannot be characterized as an attempt to foreclose the ability of prisoners to litigate matters related to the conditions of their confinement given the current delays in mail service provided by the United States Postal Service.  Moreover, delays in delivering IGO decisions, thus affecting the ability to appeal those decisions to state circuit court, does not implicate the First Amendment right of access.

Further, delays in answering requests from inmates seeking copies of cases and addresses by the prison library when the COVID-19 pandemic greatly impacted the ability of prison staff to be on-site to timely respond to inmate requests sent to the library are understandable in light of the global pandemic.  As noted, while *Bounds* established that prisoners have a right to meaningful access to the courts, there is no established right to peruse legal materials for the purpose of formulating an unspecified claim.  Plaintiff's assertion that he was not provided with the address of the Allegany County Circuit Court in a timely fashion because the library was not fully operational is specious.  Plaintiff does not indicate that he sent that request elsewhere, such as to his Case Management Specialist, and was refused the information, nor does he describe the nature

of the action he was seeking to file in the Allegany County Circuit Court.[8]  Additionally, Plaintiff admits that he knew the library was not fully functional due to the pandemic, but seemingly continued to rely solely on the prison library for delivery of materials and information he required for time-sensitive pleadings.  Plaintiff cannot create a claim in his favor by ignoring advisories given to the inmate population that normal services such as delivery of requested material from the prison library have been disrupted beyond anyone's control.  Defendants are entitled to dismissal of this claim.

C.     Motion for Partial Summary Judgment

Plaintiff's failure to state a claim essentially moots his own motion for partial summary judgment.  Plaintiff recounts in this motion the occasions where he received copies of the Inmate Grievance Office decisions issued in his case with five days left to file a Notice of Appeal to the State Circuit Court.  ECF No. 24.  The motion is essentially a recapitulation of the claims raised in his complaint; he does not include allegations or evidence that establish he lost the opportunity to litigate meritorious claims.  Plaintiff has not demonstrated by this motion his entitlement to summary judgment in his favor.  The motion shall be denied.

CONCLUSION

By separate Order which follows, Defendants' motion shall be granted, and Plaintiff's amended complaint shall be dismissed.  All remaining motions shall be denied.


July 14, 2021                                              _____/s/_____
                                                          DEBORAH K. CHASANOW
                                                          United States District Judge


---

[8]     To the extent Plaintiff's intent was to appeal the dismissal of his IGO cases described supra, the appeals are without any discernible merit.