IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY CORPORAL,

    Plaintiff,

    v.                                  Civil Action No.:  DKC-20-2681

WARDEN WEBER,
ASSISTANT WARDEN BUTLER,
SECURITY CHIEF ARNOLD,
F. TAYLOR,
COMMISSIONER HILL,
SECRETARY GREEN,

    Defendants.

**MEMORANDUM OPINION**

In response to this court's Memorandum Opinion and Order of November 22, 2023, Plaintiff Jeffrey Corporal filed a Motion for Summary Judgment (ECF No. 54) and counsel for Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 58). Mr. Corporal has opposed Defendants' motion.  ECF No. 61.  No hearing is necessary to resolve the matters pending.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, summary judgment will be denied as to both parties.  Mr. Corporal will be granted 28 days to inform the court whether he wants appointed counsel.

BACKGROUND

I.    Procedural History

This case was remanded to this court by the United States Court of Appeals for the Fourth Circuit for consideration of Mr. Corporal's claim that he was denied access to the courts when he did not receive a dismissal decision from the Inmate Grievance Office ("IGO") in time to file an appeal of the administrative agency decision to the appropriate state circuit court.  Mr. Corporal

claimed that the reason he did not receive the decision in a timely fashion is that Division of Correction officials chose to use a private mail system for delivering IGO decisions.  The effort to file an appeal with the state circuit court was, according to Mr. Corporal, further thwarted by the means with which Defendants chose to operate the prison law library.  *See* ECF No. 39-1 at 5.

Defendants' initial response to this court's Order (ECF No. 41) directing them to respond to Mr. Corporal's claim that he was denied an opportunity to litigate a claim due to delays caused by a private mail delivery service was inadequate for this court to resolve their Motion to Dismiss or for Summary Judgment.  ECF No. 52.  This court noted the following issue for further briefing by the parties:

> The IGO decision referenced by the Fourth Circuit is IGO Case Number 202-003-50, which the Fourth Circuit characterizes as Mr. Corporal's challenge to the conditions of his confinement.  *Id*. at 3.  The Fourth Circuit noted that this court "mistakenly attributed the allegations Corporal raised in case No. 202-003-50 to a different grievance."  ECF No. 39-1 at 3, n. 1.  The only document in the record bearing "IGO No. 20200350" is a letter dated June 19, 2020 from the administrative officer of the Inmate Grievance Office stating that the grievance concerned ARP-WCI-2330-19 regarding an alleged use of mace against Mr. Corporal by Lt. Smith after he refused to obey several orders on December 5, 2019.  ECF No. 1-4 at 1.  Neither Mr. Corporal, nor Defendants have attempted to address this apparent discrepancy.
>
> ***
>
> The claim to be addressed here is whether Mr. Corporal was prevented from litigating a meritorious claim by appealing an adverse IGO decision to the appropriate state circuit court.  Resolution of that claim does not require this court to embroil itself in the day-to-day operations of a prison.  Rather, it requires this court to discern whether the underlying litigation Mr. Corporal was prevented from pursuing had any merit.

*Id*. at 2, 5.  In light of the issues with the record before the court, the parties were directed as follows:

> Defendants are directed to explain: (1) what the subject matter was of IGO No. 20200350; (2) why a 20-day delay in providing Mr. Corporal with a letter from the IGO summarily dismissing IGO No. 20200350 did not impact on Mr.

Corporal's appeal to the state circuit court; and (3) why Mr. Corporal's appeal was unlikely to be successful.   Mr. Corporal may respond to Defendants' arguments and may also submit further briefing explaining: (1) the subject matter of IGO No. 20200350; and (2) why his appeal was likely to be successful.

ECF No. 52 at 6.  The responses to the court's directives are now before the court for consideration.

II.     IGO No. 2020-0350

The relevant IGO complaint (IGO 2020-0350) is an appeal of Mr. Corporal's administrative remedy procedure complaint ("ARP"), ARP-WCI-2330-19.  ECF No. 58-1 at 14. Mr. Corporal raised a number of claims in the ARP, all of which related to an incident that occurred on December 5, 2019.  The ARP is dated December 8, 2019, and stamped received on January 21, 2020.  *Id.* at 12.  In short, those claims include cruel and unusual punishment from the assault by officers, deliberate indifference to a serious medical need by the nurse, cruel conditions in the isolation cell, due process violation by prohibiting appeal of IGO decision, and denial of religious observance.

Mr. Corporal alleged in his very lengthy ARP-WCI-2330-19 that on December 5, 2019, he was escorted to his newly assigned cell (4C-21) by Officer Barnes.  The new cell was occupied by another inmate with whom Mr. Corporal had previously refused to share a cell.  After Officer Barnes removed Mr. Corporal's handcuffs, Mr. Corporal said he would not allow Officer Barnes to remove the handcuffs from his cellmate's wrists unless he was moved to cell 4C-16 and remained in that cell alone.  Lt. Smith arrived in the area and warned that if Mr. Corporal continued to prevent the removal of his cellmate's handcuffs, Mr. Corporal would be maced and beat-up. After refusing again, Lt. Smith ordered Officer Barnes to spray mace at Mr. Corporal repeatedly through the cell door's opened slot. ECF No. 58-1 at 3-4.

Mr. Corporal used a chair pressed against the opened slot to block most of the mace but the mace that entered the cell hit his hands, causing him a painful burning sensation.  Mr. Corporal

3

stated that because the chair was so effective at blocking the mace, Lt. Smith ordered the cell door to be opened, whereupon Officers Smith and Barnes rushed into the cell.  ECF No. 58-1 at 4.

Mr. Corporal admitted in his ARP that he did not recall everything that happened inside the cell because the events unfolded so quickly but claimed that when he stumbled out of the cell along with Lt. Smith, he fell on his chest as he was complying with orders to submit to handcuffing. He claimed that Lt. Smith punched him repeatedly in his left rib cage and placed the handcuffs on him extremely tight.  Mr. Corporal stated that he was then quickly dragged to the property room in housing unit 4 where he was pushed inside a holding cage.  He claimed that Lt. Smith began punching him repeatedly in his forehead, face, chest, and his thighs.  Mr. Corporal alleged that Lt. Smith then grabbed his ankles, pulled him to the group while Mr. Corporal was face-down, and stomped him repeatedly in his lower back and on his wrists and hands which were still restrained in handcuffs.  Lt. Smith then left the holding cage and Lt. Smith and the other officers present began macing Mr. Corporal in his face for about 50 seconds continuously.  ECF No. 58-1 at 4.

When Mr. Corporal was seen by the nurse, he claimed that she did nothing beyond checking his vital signs.  She refused to wash the mace from his face; examine his body where he felt pain, or prescribe medication for the pain and emotional distress inflicted on him.   He claimed that when he told her his injuries were the result of an assault by correctional officers, the nurse laughed.  Mr. Corporal also complained that the officer who photographed him after he was medically evaluated, denied his request to take another picture after the mace was completely washed off his face and denied his requests to photograph other parts of his body that were injured. ECF No. 58-1 at 5.

Mr. Corporal showered and was then confined in a temporary isolation cell (4B-01) where he was required to remain for six days, from December 5 through 11, 2019.  The cell light remained

on continuously because nobody could turn it off, he was denied all of his property but was provided allowable clothes (a jumpsuit, a pair of socks, and boxer shorts).  He stated he was repeatedly denied sheets and a blanket, slippers and shoes, hygiene products, clean clothes, showers, a towel and washcloth, and legal documents.  Mr. Corporal described the cell as being cold and the floor, which he had to walk on without shoes, was hard and cold.  He was not provided out of cell recreation, utensils to eat his meals, sufficient toilet paper, cleaning supplies, religious material, and access to the mailing system (*i.e.*, he could not send or receive mail).  He claimed he was denied access to the courts; the administrative remedy procedure; the law library; and sick call forms used to obtain medical attention.  ECF No. 58-1 at 5.

Mr. Corporal claimed he sustained the following injuries as a result of his confinement to the isolation cell for six days: anxiety and depression, sore feet, sore knees, sore ankles, sore eyes, headache, sleep deprivation, sore and irritable gums, itchy feet and toes, and itchy skin.  He characterized these conditions as life-threatening.  ECF No. 58-1 at 6.

Mr. Corporal additionally claimed that he was denied access to the courts while confined to the isolation cell because he was denied access to his legal documents and prohibited from sending or receiving mail.  He stated that he was prevented from filing a timely appeal which was due December 12, 2019, challenging the IGO's decision dated November 12, 2019 in case number IGO No. 201 914 00.  He stated that his federal rights were violated and requested to be paid $100 million dollars for each alleged violation of his First and Eighth Amendment rights.  ECF No. 58-1 at 7.

On January 6, 2020, the Warden dismissed the ARP because "[p]hotographs and medical documentation both show no evidence of alleged injuries."  ECF No. 58-1 at 13.  He further noted

that all policies and procedures in the Use of Force Manual were followed and encouraged Mr. Corporal to "use the administrative remedy process in good faith." *Id.*

On February 4, 2020, Mr. Corporal's appeal to the Commissioner of Correction was also dismissed, noting that the warden fully addressed the complaint and that Mr. Corporal had "failed to provide any additional evidence to substantiate your claim that staff used excessive force." ECF No. 58-1 at 7.  The Commissioner also noted that Mr. Corporal admitted that he refused a direct order from staff and staff used the correct amount of force to gain his compliance. *Id*.

On March 8, 2020, Mr. Corporal initially appealed to the IGO because, as he believed at the time, the Commissioner failed to respond to his appeal by March 6, 2020.  ECF No. 58-1 at 29.  The appeal was stamped received by the IGO on March 12, 2020. *Id*.  In a letter dated April 24, 2020, the IGO contacted Mr. Corporal and asked him to provide the paperwork from his appeal to the Commissioner.  ECF No. 58-1 at 27-28.  Mr. Corporal responded to the letter in a letter dated May 5, 2020, which was received by the IGO on May 8, 2020.  In his letter, Mr. Corporal explained that his initial appeal concerned a lack of response from the Commissioner but in the interim, he had received the Commissioner's response. *Id*. at 15.  He provided the requested documentation to the IGO with his correspondence. *Id*.

In his March 8 appeal to the IGO, Mr. Corporal raised the following claims:  his Eighth Amendment rights were violated when Lt. Smith assaulted him; Officer Barnes maced him through the cell door; Nurse D. Showalter did not provide adequate treatment following the assault; and he was confined improperly for six days in a temporary isolation cell which also violated correctional policy.[1]  ECF No. 58-1 at 30.  He further alleged in his appeal that his Fourteenth Amendment due

---

[1]    Mr. Corporal referenced the 2011 meritorious decision by the IGO in a case concerning violation of "the now obsolete" DCD 110-4, listing requirements that must be met when correctional staff confine an inmate to an isolation cell.  ECF No. 58-1 at 30.

process rights were violated by his six-day confinement in a temporary isolation cell which prevented him from appealing a prior decision issued by the IGO and that his First Amendment right to practice his religion was violated because he was not given religions material while confined in the isolation cell for six days.  *Id.*

In a letter dated June 19, 2020, Sandra Holmes advised Mr. Corporal that a preliminary review of his grievance, which was received on March 12, 2020, and pertained to ARP-WCI-2330-19, was "wholly lacking in merit because [Mr. Corporal] failed to state a claim upon which administrative relief can and should be granted."  ECF No. 58-1 at 14.  The dismissal letter referenced the Use of Force Manual and noted that Mr. Corporal had "failed to substantiate your claim from which it can be concluded that staff ignored any calls for help."  *Id.*

Mr. Corporal argues that the IGO's letter dismissing his complaint did not address his claims regarding being confined to an isolation cell for six days.  ECF No. 54-1 at 4.  Mr. Corporal relies on a successful grievance he filed in December of 2009 regarding his confinement to an isolation cell at WCI for four days during which he experienced similar conditions.  *Id.*  Mr. Corporal states that, after that ARP was dismissed by the Warden and the Commissioner, his claim was found meritorious by ALJ Robert Berry in a decision dated April 25, 2011.  *Id.*  The ALJ's decision, which was adopted by the Secretary of Public Safety, stated that the Division of Correction should conduct a review of the use of temporary isolation cells in Housing Unit 4 at WCI.  *Id.* at 4-5.  Mr. Corporal states that he is unaware of such a review taking place.  *Id.* at 5.  Mr. Corporal points out that DCD 110-4, regarding isolation cells, stated that inmates may not be confined in those cells longer than twenty-four hours and requires a health care provider to assess the inmate and determine whether such confinement would be detrimental to the inmate's health.

*Id*.  Further, Mr. Corporal states that prisoners confined to isolation cells are entitled to hygiene items and they can only remain in such a cell if a shift commander approves it.  *Id*.

Mr. Corporal contends that given the precedent that he established in 2009 and the violation of the regulations noted, the dismissal of his ARP by the IGO would have been easily and successfully appealed.  ECF No. 54-1 at 6.  Defendants counter that Mr. Corporal's complaint was unequivocally found to be without merit at each stage of review.  ECF No. 58 at 7.  They further argue that the omission in the IGO's dismissal describing each aspect of Mr. Corporal's claims about the isolation cell is inconsequential and does not mean the analysis was incomplete.  *Id*.

III.   Administrative Agency Decision Appeal

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an administrative remedy procedure which was established by Md. Code Ann., Corr. Servs. ("C.S."), §§ 10-201 *et seq*.  The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction."  C.S. § 10-206(a).  Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement."  Code Md. Reg. ("COMAR") 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2.  C.S. § 10-210(a).  There is an established administrative remedy procedure process that applies to all Maryland prisons.  COMAR 12.07.01.05B 2.28.01.  Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[2] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies. *See* C.S.

---

[2]   If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

§ 10-210.  It is this judicial review that is at issue with Mr. Corporal's IGO decision.  An inmate

need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative

exhaustion requirement.  *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all

administrative options that the state offers need not also pursue judicial review in state court.").

STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant is
> entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat

the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d

514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should

"view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in

her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia

Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and

defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted)

10

(quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

ANALYSIS

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

In *Christopher v. Harbury*, 536 U.S. 403 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id.* at 413-14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class,

termed "backward looking claims," arise when a Plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1208. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove that he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Mr. Corporal's proposed challenge to the IGO's summary dismissal of his ARP appeal consists of two parts: (1) the IGO did not specifically mention his claims regarding the conditions of his confinement in the isolation cell when his appeal was dismissed; and (2) on facts similar to the claims he raised on this occasion, the IGO found his claim meritorious because prison staff did not abide by the institutional directives in place that governed the use of isolation cells.[3]

The IGO Executive Director's responsibility during preliminary review is to "liberally consider the circumstances of the grievance when determining if the grievance is properly before

---

[3]    Defendants' assertion that the April 26, 2011, IGO decision (ECF No. 48-2) finding in Mr. Corporal's favor is not properly before this court is incorrect as this court directed Mr. Corporal to demonstrate the merits of his planned appeal to the State court and the IGO decision is related to the merits of his appeal. ECF No. 52 at 6.

the Office" and is required to dismiss a grievance on preliminary review as "wholly lacking in merit if . . . [t]he grievant does not establish a claim for which the [IGO] can grant relief."  COMAR 12.07.01.02.E. and COMAR 12.07.01.06.B.6.

Mr. Corporal's appeal to the IGO clearly set forth each of his claims in a numbered list prior to the narrative he submitted with his ARPs.  *See* ECF No. 58-1 at 30.  Mr. Corporal pointed out that his 2011 case before the IGO, which he describes as being based in part on a "now obsolete" directive, was found to have merit and concerned a similar confinement to a cell without his personal possessions and without access to legal materials or religious items.

Mr. Corporal does not provide the specific policy or procedures violated by correctional officials when he was confined in a similar manner.  Defendants do not argue that policy or procedure was followed in connection with Mr. Corporal's cell assignment, and also do not provide the policy that governs confinement to an isolation cell.[4]  Further, they have not provided any documentation of the investigation into Mr. Corporal's ARP as set forth in COMAR 12.02.28.10.A(5)(c) which requires that an ARP not subject to dismissal on preliminary review must be assigned for investigation.  On this record, it cannot be discerned if all of Mr. Corporal's claims were investigated.  Thus, it is not possible to determine whether the IGO's preliminary review dismissal considered all of Mr. Corporal's claims.  If the IGO's decision cannot be construed as a decision on all of Mr. Corporal's claims, his appeal to the State circuit court would have likely been a successful one and, at a minimum, required a remand to the IGO for full consideration of the grievance.

The record before the court is insufficient to sustain the conclusion advocated by Defendants: that Mr. Corporal's appeal of the preliminary review dismissal of his IGO complaint

---

[4]    Mr. Corporal's grievance did not allege that he was confined to the cell as a result of a disciplinary proceeding.  Thus, the directive concerning disciplinary segregation (DCD 110-6) does not appear to apply.

would have been unsuccessful.  For this reason, summary judgment must be DENIED as to both parties.  A separate Order follows.

April 4, 2024                                                     /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge

14